# UNITED STATES BANKRUPTCY COURT
## FOR THE
## DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**KENNETH D. MAY and**                              Chapter 13
**VALERIE CORBIN-MAY**,                             Case No. 10-10781-JNF
                    Debtors
~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**KENNETH D. MAY and**
**VALERIE CORBIN-MAY**,
                    Plaintiffs

v.                                                  Adv. P. No. 10-1176

**SUNTRUST MORTGAGE, INC.,**
                    Defendant

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~


## MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the "Limited Motion for Judgment on the Pleadings"

(the "Motion") filed by the Defendant, SunTrust Mortgage, Inc. ("SunTrust"), pursuant to

Fed. R. Civ. P. 12(c), made applicable to this proceeding by Fed. R. Bankr. P. 7012(b).

SunTrust seeks judgment on a portion of Count I and the entirety of Count II of the First

Amended Complaint filed by Chapter 13 debtors, Kenneth D. May and Valerie Corbin-May

(each, a "Debtor" and jointly, the "Debtors").  The Debtors opposed the Motion, and the

1

Court conducted a hearing on March 30, 2011, following which SunTrust filed a reply memorandum with respect to issues raised at the hearing.

## II. FACTS AND PROCEDURAL HISTORY

The Debtors filed a voluntary petition under Chapter 13 of the Bankruptcy Code on January 28, 2010, and commenced the instant adversary proceeding by filing a complaint against SunTrust on June 28, 2010. On July 6, 2010, the Debtors filed their First Amended Complaint, containing two counts against SunTrust, the assignee of the Debtor's mortgage, based upon violation of the Massachusetts Consumer Credit Cost Disclosure Act ("MCCCDA"), Mass. Gen. Laws ch. 140D, § 1 *et seq.*, the Massachusetts counterpart to the federal Truth in Lending Act, 15 U.S.C. §§ 1601-1667(f) ("TILA"). SunTrust filed an Answer on July 27, 2010 and later filed the Motion on January 31, 2011.[1] On March 22, 2011, the Debtors, after obtaining leave of Court, filed their Second Amended Complaint, adding two counts against SunTrust. The Statement of Facts as well as Counts I and II of the Second Amended Complaint are identical to those contained in the First Amended Complaint. The parties agreed at the March 30, 2011 hearing that SunTrust was not seeking judgment on the added counts in their Motion. Accordingly, the Court will construe the Motion as a request for judgment on Counts I and II of the Second Amended Complaint (hereinafter, the "Complaint"), despite SunTrust's filing of the Motion in response to the First Amended Complaint.

---

[1] The Court notes that the Motion should have been filed prior to the Answer under Fed. R. Civ. P. 12.

The Debtors allege the following facts in the Complaint which the Court must accept as true for purposes of the Motion, as discussed below in Section III A.  On October 7, 2005, the Debtors executed a mortgage (the "Mortgage") on their home located at 15 Newton Street, Brockton, Massachusetts (the "property") in favor of Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee of Summit Mortgage LLC ("Summit"). The Mortgage secured a loan from Summit in the principal amount of $300,000 (the "Loan transaction"). Summit failed to deliver to each Debtor at the closing a sufficient number of copies of the notice of the right to rescind the transaction required by the MCCCDA. Additionally, Summit charged the Debtors a fee for a municipal lien certificate in the amount of $90.00, as well as a FedEx delivery fee in the amount of $30.00 which were not included as part of the "finance charge" disclosed to the Debtors in connection with the Loan transaction.

Following the closing, a document purporting to be an assignment of the Mortgage from MERS to Suntrust was recorded at the registry of deeds.  SunTrust began foreclosure proceedings against the Debtors at some point prior to their bankruptcy filing in January of 2010.  The Debtors thereafter notified SunTrust by letters dated June 4, 2010, of their election to rescind the Loan transaction.  They sent the letters more than four years after the date of the Loan transaction closing. SunTrust received the rescission notices but failed to take any action within twenty days of receipt to reflect termination of its security interest in the property or to return to the Debtors any monies paid by them in connection with the Loan transaction.

In Count I of the Complaint, the Debtors seek rescission of the Loan transaction against SunTrust by way of recoupment, as a defense to foreclosure, as a result of Summit's failure to deliver the requisite number of copies of the notice of right to cancel ("NRC"), as well as for the failure of SunTrust to honor the Debtors' rescission notices. The Debtors seek a determination that the Mortgage is null and void, a return of all monies or other property given by them in connection with the Loan transaction, and a declaration that they are not required to tender the amounts remaining after the return of monies and property given by them, as well as costs and attorney's fees under MCCCDA.  In Count II, the Debtors allege that the finance charge disclosed to them in connection with the Loan transaction was understated by more than $35 and therefore, beyond the tolerance permitted by MCCCDA. The Debtors seek rescission of the Loan transaction by way of recoupment as well as the same relief contained in Count I.

SunTrust filed a Memorandum in support of the Motion, to which it attached two copies of an NRC executed by each of the Debtors, both of which contain an acknowledgment of their receipt of two copies each of the NRC form on the Loan transaction closing date.  SunTrust also attached to its Memorandum a copy of a Corporate Assignment of Mortgage, dated August 10, 2009, reflecting the assignment of the Mortgage from MERS to SunTrust.

**III. DISCUSSION**

A. Standard for Judgment on the Pleadings

"In reviewing a motion for a judgment on the pleadings, the court accepts as true

4

all material facts pleaded by the non-moving party, and grants reasonable inferences from the pleadings in favor of the non-moving party." Lomagno v. Salomon Bros. Realty Corp. (In re Lomagno), 320 B.R. 473, 477 (B.A.P. 1st Cir. 2005), aff'd, 429 F.3d 16 (1st Cir. 2005)(citing de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir.1991)). See also Soto-Torres v. Fraticelli, __ F.3d __ , 2011 WL 3632450 (1st Cir. Aug. 19, 2011).  A Rule 12(c) motion for judgment on the pleadings "is treated much like a Rule 12(b)(6) motion to dismiss." Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir.2008)(citing Curran v. Cousins, 509 F.3d 36, 43-44 (1st Cir. 2007)).  Like a Rule 12(b)(6) motion to dismiss, to survive a Rule 12(c) motion, factual allegations in the complaint "must be enough to raise a right to relief above the speculative level" and cross the line between "possibility" and "plausibility" of entitlement to relief. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1959 (2007).

        "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the . . . court to draw on its judicial experience and common sense." Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937, 1950 (2009). See also Gentilello v. Rege, 627 F.3d 540, 544 (5th Cir. 2010) (applying Iqbal to a Rule 12(c) motion). Normally a motion for judgment on the pleadings deals solely with the pleadings as filed. When, as here, "matters outside the pleadings are presented to and not excluded by the court, the [12(c)] motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 7012(d). SunTrust has requested that the Court consider the documents attached to its Memorandum without converting its Motion into one for summary judgment.  In the

5

absence of any objection by the Debtors with respect to the authenticity or inclusion of the

documents supplied by SunTrust and in light of the integral nature of those documents in

assessing the Debtors' Complaint, the Court grants this request.  *See* Alternative Energy,

Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 34 (1st Cir.2001)( "Under First Circuit

precedent, when a 'complaint's factual allegations are expressly linked to—and admittedly

dependent upon—a document (the authenticity of which is not challenged),' then the court

can review it upon a motion to dismiss.")(quoting Beddall v. State St. Bank & Trust Co., 137

F.3d 12, 17 (1st Cir. 1998)).

     B. Count I

Count I is a claim for rescission of the Loan transaction, by way of recoupment,

based on two alleged violations of MCCCDA: Summit failed to deliver the requisite

numbers of copies of the NRC to each Debtor at the closing and SunTrust failed to rescind

the Loan transaction within twenty days of the Debtors' rescission demand.  In addition

to rescission, the Debtors seek costs and attorney's fees against SunTrust.  The request for

fees and costs is the focus of SunTrust's Motion with respect to Count I.

     1. Applicable Law

Mass. Gen. Laws ch. 140D, § 10(a) gives consumers a right of rescission in a credit

transaction in which a creditor takes a security interest in the consumer's principal dwelling

until midnight of the third business day following consummation of the transaction or the

delivery of the required disclosures from the lender. The required disclosures include two

copies of the NRC for each borrower[2] and the "material disclosures," which include

disclosure of the "finance charge," as discussed further below. 209 Mass. Code Regs. §

32.23(1)(c), n.48. Failure to deliver the requisite copies of the NRC or material disclosures

triggers a four year extended period in which to exercise the right to rescind.  Mass. Gen.

Laws ch. 140D, § 10(f); 209 Mass. Code Regs. § 32.23(1)(c).  Section 32 of MCCCDA, in turn,

provides for the imposition of damages, costs and attorney's fees against a creditor for

violation of the statute, and provides, in part, the following:

> (a) Except as otherwise provided in this section, any *creditor* who fails to
> comply with any requirement imposed under this chapter or any rule or
> regulation issued thereunder including any requirement under section ten
> [the rescission section] with respect to any person is liable to such person in
> an amount equal to the sum of:
>
> ***
>
> (3) In the case of any successful action to enforce the foregoing liability or
> in any action in which a person is determined to have a right of rescission
> under section ten, the costs of the action, together with a reasonable
> attorney's fee as determined by the court.

Mass. Gen. Laws ch. 140D, § 32(a)(3)(emphasis added).

Pursuant to Mass. Gen. Laws ch. 140D, § 10(b) a creditor must, within twenty days

of receiving a notice of rescission from a consumer, return all money paid by the obligor

and must terminate the security interest created under the loan transaction.

Mass. Gen. Laws ch. 140D, § 33(c) and (d)(1) govern mortgagee assignee liability

under MCCCDA.  It provides:

---

[2] *See* 209 Mass. Code Regs. § 32.23(2)(a) ("In a transaction subject to rescission, a
creditor shall deliver two copies of the notice of the right to rescind to each consumer
entitled to rescind . . . .").

(c) Any consumer who has the right to rescind a transaction under section ten may rescind the transaction as against any assignee of the obligation.

(d)(1) Except as otherwise specifically provided in this chapter, or any rule or regulation issued thereunder, any civil action against a creditor with respect to a consumer credit transaction secured by real property for a violation of this chapter and any proceeding under section six may be maintained against any assignee of such creditor only if—

> (i) the *violation for which such action or proceeding is brought is apparent on the face of the disclosure statement* provided in connection with such transaction pursuant to this chapter; and

> (ii) the assignment to the assignee was voluntary.

For the purposes of this section, a violation is apparent on the face of the disclosure statement if:

> (i) the disclosure can be determined to be incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement; or

> (ii) the disclosure statement does not use the terms or format required to be used by this chapter.

Mass. Gen. Laws ch. 140D, § 33(c) and (d)(1)(emphasis added). Furthermore, except in rescission proceedings, § 33(b) of MCCCDA provides that in any action taken against an assignee, written acknowledgments by borrowers of receipt of disclosures are conclusive proof of delivery when the assignee has no contrary knowledge.

Lastly, § 10(g) of MCCCDA provides:

> (g) Additional Relief

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section thirty-two [damages, costs and attorney's fees] not relating to the right to rescind.

8

Mass. Gen. Laws ch. 140D, § 10(g).

### 2. Positions of the Parties

SunTrust seeks a partial judgment on Count I, only to the extent the Debtors request attorney's fees and costs for Summit's failure to deliver to them the required number of NRC forms at closing.  With respect to Count I, SunTrust maintains that any failure by Summit to deliver the requisite number of copies of the NRC cannot subject it to costs or fees as an assignee of the Mortgage because such a violation of MCCCDA was not "apparent on the face of the disclosure statement," citing Mass. Gen. Laws ch. 140D § 33(d)(1)(i) and Giza v. Amcap Mortg., Inc. (In re Giza), 428 B.R. 266 (Bankr. D. Mass. 2010). Additionally, SunTrust asserts that in any action for damages and attorney's fees against an assignee, written acknowledgment by borrowers of receipt of disclosures is conclusive proof of delivery when the assignee has no contrary knowledge, citing Mass. Gen. Laws ch. 140D § 33(b).

The Debtors seek to avoid the limitations on assignee liability contained in Mass. Gen. Laws ch. 140D, § 33(d) on three grounds.  First, the Debtors assert that the limitation of liability to violations "apparent on the face of the disclosure statement" in § 33(d)(1) applies only in "civil actions," i.e. only in cases seeking damages, and does not apply to cases such as this where rescission is sought under §33(c), relying on a number of cases from jurisdictions outside of this district interpreting the parallel provisions of TILA,[3]

_____

[3] "It is, . . . , common ground that the MCCCDA should be construed in accordance with the TILA." McKenna v. First Horizon Home Loan Corp., 475 F.3d 418,

9

including <u>Fairbanks Capital Corp. v. Jenkins</u>, 225 F. Supp.2d 910 (N.D. Ill. 2002), discussed

at length below; <u>Egipciaco Ruiz v. R&G Fin. Corp</u>. 313 F. Supp.2d 48 (D. P.R.

2004)(following <u>Fairbanks Capital</u>) and <u>Blythe v. HSBC Bank USA, N.A. (In re Blythe)</u>, 413

B.R. 205, 212 (Bankr. E.D. Pa. 2009).  Second, because the "apparent on the face" limitation

applies "except as otherwise specifically provided in this chapter," the Debtors contend

that the phrase is a reference to Mass. Gen. Laws ch. 140D, §§ 10(g) and 32. The Debtors,

however, fail to provide any authority for their position.  Third, the Debtors maintain that

immunizing assignees from liability for attorney's fees and costs is at odds with the

legislative intent behind MCCCDA and TILA of providing consumers with a viable

mechanism for rescinding unlawful transactions.

The Debtors address Judge Boroff's decision in <u>In re Giza</u>, 428 B.R. 266 (Bankr. D.

Mass. 2010), and his reliance on the Massachusetts Supreme Judicial Court's decision in

<u>Mayo v. Key Fin. Servs., Inc</u>., 424 Mass. 862 (1997).  In that case, the Supreme Judicial Court

overturned an award of attorney's fees in connection with a successful rescission action

against an assignee because the violations were not apparent on the face of the disclosure

statement.   The Debtors maintain that the <u>Mayo</u> court's ruling was erroneously based on

a flawed and inadequate analysis without appropriate references to case law.  They request

that this Court certify the question to the Supreme Judicial Court for determination

─────────────────

422 (1st Cir. 2007)(citing <u>In re Desrosiers</u>, 212 B.R. 716, 722 (Bankr. D. Mass. 1997); <u>Mayo</u>
<u>v. Key Fin. Servs., Inc</u>., 424 Mass. 862, 864, 678 N.E.2d 1311, 1313 (1997)).

pursuant to SJC Rule 1.03[4] in light of the current slew of mortgage litigation which has been commenced against assignees.

Even in the event that the Court were to determine that they are barred from recovering attorney's fees and costs from SunTrust under MCCCDA, the Debtors contend that they would still be entitled to an award under Mass. Gen. Laws ch. 93A, the Massachusetts consumer protection statute, if they were to prevail on their rescission claim due to SunTrust's failure to comply with their prepetition rescission request. Although the Debtors did not include a count under ch. 93A in the First Amended Complaint, they did include one in the Second Amended Complaint (Count IV), and they seek to maintain Count I for the purpose of preserving their rights under ch. 93A, citing Mass. Gen. Laws ch. 140D, § 34 which provides that "[a] violation of this chapter, or any rule or regulation issued hereunder, shall constitute a violation of chapter ninety-three A." The Court need not address this argument as the ch. 93A count was not pleaded and therefore was not ripe

---

[4] The Rule provides, in part, the following:

**Section 1. Authority to Answer Certain Questions of Law.** This court may answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or of the District of Columbia, or a United States District Court, or the highest appellate court of any other state when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court.

SJC Rule 1.03(1).

when SunTrust filed its Motion.

### 3. Analysis

As a threshold matter, the Court finds that the Debtors may assert a right to rescission by way of recoupment, notwithstanding the expiration of the four year statute of limitations. In Maxwell v. Fairbanks Capital Corp., (In re Maxwell), 281 B.R. 101 (Bankr. D. Mass. 2002), this Court held that a debtor's rescission claim, by way of recoupment, was not barred by the expiration of the four year statute of limitations set forth in MCCCDA. Id. at 124. Whether the Debtors can maintain a claim for costs and attorney's fees against SunTrust, an assignee of the original lender, is another matter.  As recently discussed by the court in Kelly v. Deutsche Bank Nat. Trust Co., 11-10328-RGS, 2011 WL 2262915 (D. Mass. June 9, 2011), "[t]he affirmative defense of recoupment, properly applied, may only serve 'to reduce or extinguish the plaintiff's claim, but it c[an] not result in an affirmative recovery for the defendant.'" Id. at *2 (quoting Bose Corp. v. Consumers Union of U.S., Inc., 367 Mass. 424, 427–428, 326 N.E.2d 8 (footnote omitted) (1975)). While the Kelly court noted that the doctrine of recoupment remains viable in bankruptcy law, it dismissed a plaintiff's rescission claim by way of recoupment under MCCCDA commenced after the four year statute of limitations, determining that the plaintiff asserted recoupment to obtain affirmative relief (cancellation of his debt) rather than as a defense. Id. at *2 and n.6.

The Debtors' claims for costs and attorney's fees under MCCCDA in this case arguably constitute a request for affirmative relief outside the scope of recoupment.  The Court need not determine this issue, however, because the parties have not raised it and

because there are numerous other reasons to dismiss the Debtors' claims for costs and attorney's fees.

The Court finds that, based upon the statutory language of Mass. Gen. Laws ch. 140D, § 33(c) and (d), SunTrust's status as an assignee of the original lender shields it from liability for damages and attorney's fees because Summit's failure to deliver the required copies of the NRC forms was not apparent on the face of the disclosure statement. Moreover, SunTrust's failure to honor the Debtors' rescission request cannot serve as the basis for attorney's fees or costs against an assignee because such failure would obviously not be apparent on the face of the documents.

The Debtors cite numerous cases interpreting 15 U.S.C. § 1640(a), the TILA counterpart to Mass. Gen. Laws ch. 140D, §32, in which courts have permitted the imposition of damages, costs and attorney's fees against assignees, despite the use of the word "creditor"[5] in § 1640(a)'s introductory language. *See e.g.,* <u>Fairbanks Capital</u>, 225 F.Supp. 2d at 916 ("[I]t is clear from § 1640 taken as a whole that Congress intended [its] remedies to apply to any creditor *or assignee* that violates TILA's provisions.")(emphasis in original).   Nevertheless, courts have been divided on this issue, and the court in <u>Fairbanks Capital</u> expressly disagreed with <u>Brodo v. Bankers Trust Co</u>., 847 F. Supp. 353, 359 (E. D. Pa. 1994)(concluding that even though ". . . § 1641(c) provides that the right to

---

[5] "Creditor" is defined in TILA as the entity to which "the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness. . . ."  *See* 15 U.S.C. § 1602(f) and Mass. Gen. Laws ch. 140D, §1 (same). In other words, a "creditor" is the original payee and not an assignee of the obligation.

rescind exists even against a creditor's assignees, § 1640(a) permits only a 'creditor' [not an assignee] to be held liable for a monetary penalty or an award of attorney's fees for a TILA violation."). The court in <u>Fairbanks Capital</u> based its decision upon a review of other subsections of § 1640, notably § 1640(b) and (c) which refer to defenses available under § 1640 to creditors or assignees.  The court also examined §1641(e) of TILA, the counterpart of § 33(d) of MCCCDA, which permits a civil action against a creditor to be maintained against an assignee only if the violation is "apparent on the face of the disclosure statement." The language of § 1641(e) is qualified as it provides "except as otherwise specifically provided in this subchapter." The court in <u>Fairbanks Capital</u> concluded that § 1641(c)(permitting rescission against any assignee) is such an exception. <u>Fairbanks Capital</u>, 225 F. Supp. 2d at 917.  Upon consideration of the integrated whole of TILA, the court in <u>Fairbanks Capital</u> determined that an assignee that refuses to honor a proper rescission demand may be held liable under TILA for attorney's fees.   <u>Id</u>.  With respect to the consumers' allegation of a TILA violation based on delivery of an improper NRC, the court apparently rejected the assignee's contention that the TILA violation was not apparent on the face of the disclosure statement.  <u>Id</u>. at 915.

While "[f]ederal court decisions are instructive in construing parallel State statutes and State regulations[,]" <u>Mayo</u>, 424 Mass. at 864 (citing <u>Packaging Indus. Group, Inc. v. Cheney</u>, 380 Mass. 609, 611, 405 N.E.2d 106 (1980)), this Court is in agreement with the reasoning <u>In re Giza</u>, 428 B.R. 266 (Bankr. D. Mass. 2010), and is bound by the holding of the Supreme Judicial Court in <u>Mayo v. Key Financial Services, Inc</u>., 424 Mass. 862 (1997),

which addressed MCCCDA.  In <u>Giza</u>, the debtors sought statutory damages and attorney's

fees against the assignee of their original mortgage based on the lender's alleged failure to

deliver a sufficient number of copies of the NRC and the TILA disclosure statement at the

closing.  428 B.R. at 272-273. The court dismissed the debtors' claim for damages because

they had not alleged that there was any violation "apparent on the face of the disclosure

statement" and because, as here, the debtors signed written acknowledgments of their

receipt of the disclosures.  <u>Id</u>. at 272-273, (citing Mass. Gen. Laws ch. 140D, §§ 33(b) and

(d)(1)).  With respect to the debtors' claim against the assignee for attorney's fees under §

32(a)(3) of MCCCDA, the court also dismissed those claims.   While the <u>Giza</u> court

acknowledged the split in the federal courts over whether attorney's fees and costs may be

sought from assignees following a successful rescission action under TILA, the court

concluded that the answer in Massachusetts was settled.  The court held:

> While some federal courts have interpreted this provision [Mass. Gen. Laws
> ch. 140D, § 32(a)(3)] differently in the TILA context, the Supreme Judicial
> Court has held that attorney's fees and costs are treated like all other
> statutory damages under MCCCDA. <u>Mayo v. Key Fin. Servs., Inc.</u>, 424 Mass.
> 862, 678 N.E. 2d 1311, 1313 (1997). The court there ruled that "[a]lthough a
> borrower is given the same right of rescission against an assignee of an
> obligation as against the original lender . . . , other rights may be asserted
> under G.L. c. 140D against an assignee 'only if the violation for which such
> action or proceeding is brought is apparent on the face of the disclosure
> statement.'"

<u>Giza</u> 428 B.R. at 272 (citing <u>Mayo</u>, 424 Mass at 864)(footnote omitted). *See also* <u>Mayo</u>, 424

Mass. at 866, n.4 (The award of attorney's fees under § 32(a)(3) of MCCCDA applies only

to a "creditor" as defined by Mass. Gen. Laws ch. 140D, § 1).

In this case, the Debtors alleged in the Complaint that Summit's MCCCDA

15

violations were "on information and belief . . . apparent on the face of the loan documents assigned." They have not, however, alleged a plausible claim for attorney's fees or costs against an assignee which is conditioned on receiving disclosures that are "incomplete or inaccurate by a comparison among the disclosure statement, any itemization of the amount financed, the note, or any other disclosure of disbursement," or on receiving disclosures that used terms or a format different than those required to be used by MCCCDA. *See* Mass. Gen. Laws ch. 140D, §33(d)(1)(i) and (ii). Indeed, the Debtors' claims for attorney's fees and costs against SunTrust are based not on the content of the notices delivered at the closing, but rather their non-delivery. These claims are undermined and inconsistent with their signatures on the NRC forms on which the Debtors each acknowledged receiving two completed copies of the NRC. Simply stated, there is nothing alleged in Count I of the Complaint which would support a plausible claim for costs or attorney's fees against SunTrust, as an assignee of the original lender, based on Summit's non-delivery of all required copies of the NRC or the failure to honor the Debtors' rescission demand because any such failures were not facially discernable.

The Debtors' reliance on <u>Fairbanks Capital</u> and the decisions in accord with it, in which courts conclude that the remedies provided in § 1640(a) of TILA [§ 32 of MCCCDA] are equally available against assignees, is misplaced as those decisions do not square with Supreme Judicial Court precedent. Moreover, the reasoning of <u>Fairbanks Capital</u> and its progeny has been questioned by numerous courts. *See* <u>Russell v. Mortg. Solutions Mgmt. Inc</u>., CV 08-1092-PK, 2010 WL 3945117 (D. Or. April 6, 2010). In <u>Russell</u>, the court stated:

Although the Fairbanks court's reasoning appears plausible at first blush, analysis of the statutory language at issue indicates that Fairbanks was wrongly decided.

<p style="text-align:center">***</p>

[T]he clear gravamen of [TILA] Section 1641(c) [§ 33(c) of MCCCDA] is to except a consumer's right to rescission (and *only* the right to rescission) from the facial-discernability requirement for assignee liability. The clear corollary of Section 1641(c) is that remedies *other* than the right to rescission are *not* excepted from the broadly applicable facial-discernability requirement.

Russell 2010 WL 3945117 at *8 (emphasis in original).   *See also* Lindquist v. Wells Fargo Bank, N.A. (In re Lindqusit), 08-22324, 2010 WL 3636141, at *5 (Bankr. D. Kan. 2010)("This Court finds that the Fairbanks court's construction of § 1640(a) is inconsistent with the statutory language."); Regan v. HSBC (In re Regan), 439 B.R. 522, 531 (Bankr. D. Kan. 2010)(determining that Fairbanks Capital was distinguishable from the case at bar, *inter alia*, because assignee was not protected by § 1641 in light of Fairbanks Capital's rejection that the TILA violation was not apparent on the face of the transaction documents); Dougal v. Saxon Mortg. (In re Dougal), 395 B.R. 880, 892 n.12 (Bankr. W.D. Pa. 2008)("Fairbanks, . . . represents a distinctly minority view which this Court declines to adopt.").

The Debtors also maintain that the use of the term "civil action" in § 33(d)(1) of MCCCDA, which contains the limitation of liability to violations "apparent on the face of the disclosure statement," is intended to refer only to cases seeking damages and is not applicable, as here, in rescission cases.  The Debtors cite no specific authority for this proposition.  Moreover, their position is contrary to the Mayo decision where the consumers sought both rescission and damages against a mortgage assignee.

<p style="text-align:center">17</p>

The limitation on liability set forth in § 33(d) applies only with respect to the Debtors' claims for costs and attorney's fees and not with respect to their claim for rescission against SunTrust which is expressly permissible against assignees under § 33(c) of MCCCDA. It is not plausible that an action for damages, attorney's fees and costs would be commenced against an assignee of a mortgage under MCCCDA where such a complaint did not also include a claim for rescission.  Even in such eventuality, this Court does not believe that dual claims for both would render the provisions of § 33(d) meaningless.

The Court also is unpersuaded by the Debtors' reliance on Mass. Gen. Laws ch.140D, § 10(g) as the expression of the qualifier contained in § 33(d) of MCCCDA ("[e]xcept as otherwise specifically provided in this chapter").  The court in Andrews v. Chevy Chase Bank, 545 F.3d 570 (7th Cir. 2008), *cert. denied*, __ U.S. __, 129 S. Ct. 2864 (2009), addressed the TILA counterpart to § 10(g) of MCCCDA, 15 U.S.C. § 1635(g). It held: "Section 1635(g) is a simple remedial cross-reference; it provides that rescission plaintiffs may also seek damages under § 1640. It does no more." Id. at 576.  *See also* Brown v. Nationscredit Fin. Servs. Corp., 349 F. Supp. 2d 1134, 1137 (N.D. Ill. 2005)(Noting that there was scant legislative history on § 1635(g) of TILA, the court determined the most appropriate reading of it, consistent with its language, "is that Congress was simply clarifying that a plaintiff bringing a claim for rescission could also sue for statutory damages.").  This Court adopts the reasoning of the courts in Andrews and Brown, and shall not expand the scope of relief available under MCCCDA based on § 10(g), particularly where the Debtors have provided no case law supporting their contention that § 10(g) alters the provisions for assignee

18

liability set forth in § 33(d).  This approach is consistent with <u>Mayo</u>.

It is indisputable that the legislative intent behind TILA and MCCCDA was to provide consumers with a viable method for rescinding unlawful transactions.  The Court finds, however, that a consumer's ability to receive damages, attorney's fees and costs for successfully prosecuting rescission claims must be counterbalanced with the protections afforded assignees under both statutes.  The court in <u>Walker v. Gateway Fin. Corp.</u>, 286 F. Supp.2d 965 (N.D. Ill.2003) articulated the policy:

> Like the court in <u>Brodo v. Bankers Trust Co.</u>, 847 F.Supp. 353, 359 (E.D. Pa. 1994), this Court . . . finds that the imposition of any such damages on an assignee would create an impermissible end run around the obvious congressional purpose that underlies the Section 1641(a) enactment of a statutory equivalent to a bona fide purchaser rule. Accordingly, although Chase Bank [the assignee] must remain a defendant, the sole remedy available against it will be for rescission of the . . . loan if that claim is ultimately sustained.

<u>Id</u>. at 969.   This Court agrees with the position espoused by the Court in <u>Walker</u>.  An assignee cannot be subject to costs or attorney's fees for failing to comply with a notice to rescind[6] or for the original lender's failure to deliver the sufficient number of copies of the NRC to each consumer at closing, as neither failure constitutes an MCCCDA violation "apparent on the face of the disclosure statement."  That does not mean that the Debtors will be unsuccessful in establishing a valid rescission claim against SunTrust based on the

---

[6] Moreover, under United States Court of Appeals for the First Circuit precedent, there is no automatic liability for failing to comply with the rescission demand.  *See* <u>Large v. Conseco Fin. Servicing Corp.</u>, 292 F.3d 49, 55-56 (1st Cir. 2002)(rescission of a mortgage governed by TILA does not automatically occur at the time a debtor sends the creditor a notice of rescission but occurs when a designated decision maker finds the conditions for rescission have been met).

facts alleged in Count I.  They simply cannot seek fees or costs against SunTrust under MCCCDA as a separate basis for relief.  They possibly could seek those assessments pursuant to ch. 93A if they ultimately were to prevail on their rescission claim.[7]

Finally, this Court cannot certify the question presented here as requested by the Debtors because the Bankruptcy Court is not one of the courts from which the Supreme Judicial Court can accept certified questions under SJC Rule 1:03.  Moreover, certification is inappropriate where state law is sufficiently clear to allow prediction of its course. Ropes & Gray LLP v. Jalbert (In re Engage, Inc.), 544 F.3d 50, 53 (1st Cir. 2008).  Despite the Debtors' critique of Mayo, its holding is clear.

The Court shall enter an order granting SunTrust's Motion with respect to the portion of the Debtors' claim in Count I for attorney's fees and costs.

C. Count II

As a separate basis for rescission, damages and attorney's fees against SunTrust, the Debtors assert in Count II that Summit charged them fees which were not included as part of the "finance charge" disclosed in the Loan transaction.

1. Applicable Law

As discussed above, the right to rescind under MCCCDA expires four years after the consummation of the loan regardless of whether all the required disclosures have been provided to the consumer.  Notwithstanding the expiration of the four year statute of

---

[7] The Court makes no determination here as to the viability or timeliness of the recently added ch. 93A count against SunTrust.

limitations under §10(f) of MCCCDA, a borrower may seek rescission after such period by asserting the right of recoupment. *See* § 10(i)(3) of MCCCDA which provides that "[n]othing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth." Mass. Gen. Laws ch. 140D, § 10(i)(3).

Although a claim for rescission by way of recoupment is not barred by the four year statute of limitations set forth in § 10(f) of MCCCDA, that time period is relevant to the assertion of the finance charge disclosure violation claimed by the Debtors in Count II.[8] Finance charges are "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit." Mass. Gen. Laws ch. 140D, §4(a). Section 4(f)(2)(a) of MCCCDA governs the disclosure of the finance charge and provides that a finance charge is generally deemed to be accurate if it does not vary from the actual finance charge by

---

[8] In <u>Beach v. Ocwen Fed. Bank</u>, 523 U.S. 410, 118 S. Ct. 1408 (1998), the United States Supreme Court held that the TILA three year statute of limitations period set forth in 15 U.S.C. § 1635(f) applies to a borrower's right of rescission brought as a claim of recoupment. The Complaint in this case, however, was brought under MCCCDA and not TILA, and the Court in <u>Beach</u> itself noted: "Since there is no claim before us that Florida law purports to provide any right to rescind defensively on the grounds relevant under the Act, we have no occasion to explore how state recoupment law might work when raised in a foreclosure proceeding outside the 3–year period." <u>Beach</u>, 523 U.S. at 419, 118 S.Ct. at 1413, n. 6. By inserting Mass. Gen. Laws ch. 140D, § 10(i)(3)("Nothing in this section shall be construed so as to affect a consumer's right of recoupment under the laws of the commonwealth."), "the Massachusetts Legislature has essentially ended any debate over the meaning of the limitations period in ch. 140D, § 10(f)." <u>Fidler v. Central Coop. Bank (In re Fidler)</u>, 226 B.R. 734 (Bankr. D. Mass. 1998).

more than one-half of one percent of the total loan.[9] Section 10(i)(2) of MCCCDA reduces

the tolerance for error in the finance charge from one-half of one percent to $35 in

circumstances where, as here, a borrower asserts rescission when a foreclosure is pending.

The statute provides:

> (2) Notwithstanding the provisions of subsection (f) of section four, and *subject to the time period provided in subsection (f) of this section* [four year statute of limitations], for the purposes of exercising any rescission rights after the initiation of any judicial or nonjudicial foreclosure process on the principal dwelling of the obligor securing an extension of credit, the disclosure of the finance charge and other disclosures affected by any finance charge shall be treated as being accurate for the purposes of this section if the amount disclosed as the finance charge does not vary from the actual finance charge by more than thirty-five dollars or is greater than the amount required to be disclosed under this chapter.

Mass. Gen. Laws ch. 140D, § 10(i)(2)(emphasis added); 209 Mass. Code Regs. § 32.23(8)(b).

### 2. Positions of the Parties

---

[9] The statute provides:

(f) In connection with credit transactions not under an open end credit plan that are secured by real property or a dwelling, the disclosure of the finance charge and other disclosures affected by any finance charge—

. . .  (2) shall be treated as being accurate for the purposes of section ten if:—

(a) except as provided in subsection (b) [high cost mortgages not applicable here], the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended . . . .

Mass. Gen. Laws ch. 140D, § 4(f)(2)(a).  *See also* 209 Code Mass. Regs. § 32.23(7)(a).

SunTrust asserts that Count II is time barred under § 10(i)(2) of MCCCDA based upon the amount of the understated finance charge asserted by the Debtors. The original principal amount of the Debtors' loan with Summit was $300,000, and the Debtors allege only a $120 understatement of their finance charge, far less than the one-half of one percent variance permitted by Section 4(f)(2)(a) of MCCCDA ($1,500). SunTrust maintains that the Debtors cannot avail themselves of the $35 tolerance for error contained in § 10(i)(2) because that provision is expressly subject to the four year statute of limitations that has long since lapsed. In support, SunTrust relies on Judge Hoffman's recent decision in <u>Bettano v. Wells Fargo Bank, N.A. (In re Bettano)</u> 440 B.R. 13, 16 (Bankr. D. Mass. 2010).

The Debtors maintain that the time period set forth in § 10(f) of MCCCDA is itself subject to and modified by the recoupment provision in subsection (i)(3) ("nothing in this section shall be construed to affect a consumer's right of recoupment . . ."). They argue that § 10(i)(2) means only that "regardless of whether rescission is sought affirmatively or defensively due to a finance charge violation after the foreclosure has been commenced, the claim is evaluated under the reduced tolerance standard of $35.00." The Debtors' sole support for this reasoning is a reference to the applicable Massachusetts regulation which contains no time restrictions.[10] With respect to the <u>Bettano</u> decision, the Debtors note that it currently is on appeal and that this Court should delay a ruling in this matter until the conclusion of that appeal.

3. Analysis

---

[10] *See* 209 Code Mass. Regs. § 32.23(8)(b).

Case 10-01176   Doc 42   Filed 09/14/11   Entered 09/14/11 15:59:45   Desc Main
Document      Page 24 of 25

The Court is able to quickly dispense with Count II based on the statutory language of Mass. Gen. Laws ch. 140D, § 10(i)(2) which expressly provides that the reduced tolerance figure is subject to the four year statute of limitations set forth in § 10(f).  The Court need look no further than the analysis provided by the court in <u>Bettano</u> which examined the interplay between § 10(i)(2) and § 10(f).  It concluded:

> In establishing the reduced tolerance for error when a foreclosure is pending, the statute [§ 10(i)(2)] makes clear that the time in which this lower floor is available is limited to the four year rescission period in MCCCDA § 10(f). Put another way, even though § 10(i)(3) acknowledges a borrower's right of recoupment, which may extend beyond the four year rescission period, the legislature in § 10(i)(2) mandated that if a borrower attempts to assert that right after the rescission period expires, he may not rely on the reduced $35 threshold.
>
> * * *
>
> Since the time limit on rescission is clearly set out in § 10(f), the only possible explanation for referencing the same limit in § 10(i)(2) is to establish that the $35 threshold is available only to borrowers who attempt to rescind their loans before the four year rescission period expires, and to exclude those who attempt to rescind later by exercising their right of recoupment.

<u>Bettano</u>, 440 B.R. at 16 (Bankr. D. Mass. 2010).  The Court can see no reason to depart from the reasoning of <u>Bettano</u> and denies the Debtors' request to delay its decision until the appeal of that decision is concluded.[11]  The Court shall enter an order granting SunTrust's Motion with respect to Count II and shall dismiss that Count.

## IV. CONCLUSION

For the above stated reasons, the Court shall enter an order granting SunTrust's

---

[11] Debtors' counsel in this case also represented the Bettanos.  At the hearing held on March 30th, counsel indicated that the appeal may be delayed due to pending settlement discussions between the parties.

Motion with respect to that portion of Count I in which the Debtors seek attorney's fees and costs and granting the Motion with respect to the entirety of Count II. Judgment shall enter in favor of SunTrust consistent with the preceding sentence and Count II shall be dismissed. The Court shall schedule a pretrial conference with respect to the remaining Counts of the Second Amended Complaint.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: September 14, 2011